**UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | |
|---|---|
| CHAKEETA MYLES, ) | |
| ) | |
| Plaintiff, ) | No. 1:21-CV-03935 |
| ) | |
| v. ) | |
| ) | Judge Edmond E. Chang |
| COOK COUNTY, ) | |
| ) | |
| Defendant. ) | |

**MEMORANDUM OPINION AND ORDER**

Chakeeta Myles, a former employee of Cook County, has sued the County for employment discrimination, 42 U.S.C. § 2000e et seq.[1] R. 10, Am. Compl.[2] Myles alleges (among other things) that Cook County retaliated against her for complaining of race discrimination when it terminated her employment. *Id.* Cook County now moves to dismiss the retaliation claim, contending that Myles failed to exhaust administrative remedies for that claim. R. 13, Defs.' Mot. For the reasons discussed in this Opinion, the motion is denied.

**I. Background**

The County's motion to dismiss is really a motion for judgment on the pleadings under Federal Rule of Civil Procedure 12(c), because failure to exhaust is an affirmative defense. The Court accepts all well-pleaded allegations in the Amended

---

[1]The Court has subject matter jurisdiction over this case under 28 U.S.C. § 1331.
[2]Citations to the record are "R." followed by the docket entry number and, if needed, a page or paragraph number.

Complaint as true and views the facts in the light most favorable to Myles, who is the non-moving party. *See Hayes v. City of Chicago*, 670 F.3d 810, 813 (7th Cir. 2012).

Myles is a Black woman and started working for the Cook County Department of Revenue in 2013, most recently holding the position of Field Auditor 5. Am. Compl. ¶ 9; *see* R. 14 at 1. She met the reasonable work performance expectations of her position. Am. Compl. ¶ 10. However, Myles complained about a racially discriminatory and hostile work environment to her supervisor, Jose Vega, as well as to Tax Compliance Administrator Gary Michaels and Department of Revenue Director Zahra Ali, all to no avail. *Id.* ¶¶ 11–12.

On January 24, 2020, when Myles was getting on an elevator at work, she had an altercation with Michelle Lord, a white woman who also worked for Cook County. Am. Compl. ¶ 13. Myles alleged that Lord called her racial slurs and made unwanted physical contact with Myles when they were getting into the elevator. *Id.* So Myles filed an internal complaint with Cook County's human resources office; the complaint explained the altercation and described Lord's use of racial slurs. *Id.* ¶ 14. The next day, Myles learned that Lord had made racially derogatory statements about Myles to others and that Lord a history of being aggressive toward Black women in the workplace. *Id.* ¶ 15. Myles reported this to Jose Vega, Gary Michaels, and Zahra Ali. *Id.* Despite being instructed by the Department to avoid Myles, Lord continued to harass and intimidate her. *Id.* ¶ 16. Myles reported this to human resources, who simply told her to call the police if she felt unsafe. *Id.*

Around February 2020, Myles emailed a complaint to the Cook County President and all elected officials on the Cook County Board, as well as the County's internal EEO office, Jose Vega, Gary Michaels, and Zahra Ali. Am. Compl. ¶ 17. The complaint described Myles' altercation with Lord and Myles' experiences with racial discrimination and harassment while working for Cook County. *Id.* Cook County's Office of Inspector General (OIG) investigated the altercation and—rather than suggest any action against Lord—recommended that the County fire Myles. *Id.* ¶¶ 18–19. Zahra Ali implemented this recommendation and fired Myles on May 4, 2020. *Id.* ¶ 20.

Myles filed a Charge of Discrimination with the Equal Employment Opportunity Commission (EEOC). Am. Compl., Exh. A. One section of the Charge asked her to check the boxes indicating the basis of the alleged discrimination, and she only checked the "race" box, leaving all other boxes blank (including the "retaliation" box). *Id.* When asked to describe the "particulars" of the discrimination, she expressly wrote that she suffered race discrimination, but did mention reporting the misconduct to management:

> I was subjected to a racially divided hostile workplace environment, [i]n which *I made management aware* of on numerous occasions. I was subjected to different terms and conditions due to *my race*. Respondent terminated my employment May 04, 2020.
>
> I believe I have been discriminated against because of *my race*, Black, in violation of the Title VII of the Civil Rights Act of 1964, as amended.

3

Am. Compl., Exh. A (emphases added). After the EEOC issued a right-to-sue letter, Myles filed a complaint in this Court in July 2021, R. 1, Compl., and later filed an Amended Complaint in September 2021. The operative complaint is the Amended Complaint.

## II. Legal Standard

Cook County argues that Myles failed to exhaust administrative remedies on the retaliation claim, and initially styled its dismissal motion as a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6). Defs.' Mot. at 1. But a failure to exhaust is an affirmative defense and thus a Rule 12(b)(6) motion—which tests the adequacy of the allegations to state a valid claim—is inapt, because plaintiffs need not plead around affirmative defenses in a complaint. *Mosely v. Bd. of Educ. of City of Chicago*, 434 F.3d 527, 533 (7th Cir. 2006). The proper vehicle to assert lack of exhaustion (if it is to be considered at the pleading stage) is a Rule 12(c) motion for judgment on the pleadings. If discovery is not needed to resolve the exhaustion defense, and "if the allegations of the complaint [viewed] in the light most favorable to the plaintiff show that there is no way that any amendment could salvage the claim," *id.*, then the Court may consider the motion at the pleading stage. Neither Myles nor Cook County dispute the propriety of resolving the exhaustion defense at this stage. Myles attached the EEOC Charge as Exhibit A to her Complaint. She has not suggested in the Complaint or brief that any facts are missing from the record that would affect the exhaustion defense. So the Court can decide the exhaustion defense because "the allegations of [Myles'] complaint itself set forth everything necessary to satisfy

4

the affirmative defense." *United States v. Lewis*, 411 F.3d 838, 842 (7th Cir. 2005). Put another way, "when all relevant facts are presented, the court may properly dismiss a case before discovery—typically through a Rule 12(c) Motion for Judgment on the Pleadings—on the basis of an affirmative defense." *Brownmark Films, LLC v. Comedy Partners*, 682 F.3d 687, 690 (7th Cir. 2012) (cleaned up).[3]

In light of those governing principles, the Court reclassified Cook County's self-styled Rule 12(b)(6) motion to dismiss as a Rule 12(c) motion for judgment on the pleadings. R. 15. A party may move for judgment on the pleadings after the pleadings are closed. Fed. R. Civ. P. 12(c). A motion for judgment on the pleadings is subject to the same standard as a motion to dismiss under Rule 12(b)(6). *Mesa Lab'ys, Inc. v. Fed. Ins. Co.*, 994 F.3d 865, 867 (7th Cir. 2021). In deciding a motion for judgment on the pleadings, the Court must accept all well-pleaded allegations as true and view the alleged facts in the light most favorable to the non-moving party. *Archer v. Chisholm*, 870 F.3d 603, 612 (7th Cir. 2017). Judgment on the pleadings is proper if it appears beyond doubt that the non-moving party cannot prove any set of facts sufficient to support his claim for relief. *Mesa Lab'ys, Inc.*, 994 F.3d at 867. In ruling on a motion for judgment on the pleadings, the Court considers the pleadings alone, which consist of the complaint, the answer, and any documents attached as exhibits. *Federated Mut. Ins. Co. v. Coyle Mech. Supply Inc.*, 983 F.3d 307, 312 (7th Cir. 2020).

---

[3]This Opinion uses (cleaned up) to indicate that internal quotation marks, alterations, and citations have been omitted from quotations. *See* Jack Metzler, *Cleaning Up Quotations*, 18 Journal of Appellate Practice and Process 143 (2017).

### III. Analysis

Cook County argues that retaliation was not administratively exhausted because Myles did not present the claim in her EEOC Charge. Defs.' Mot. at 2. In response, Myles asks the Court to expansively construe the EEOC Charge. R. 17, Pl.'s Resp. at 1–2. Under the pertinent standard for interpreting EEOC Charges, Myles has the better argument.

Before presenting a particular claim in an employment discrimination lawsuit, the plaintiff must present it to the EEOC (or the parallel state antidiscrimination agency). 42 U.S.C. § 2000e-5(f); *see also Cheek v. W. and S. Life Ins. Co.*, 31 F.3d 497, 500 (7th Cir. 1994); *Cervantes v. Ardagh Group*, 914 F.3d 560, 564 (7th Cir. 2019). The purpose of this requirement is to put the employer on notice of what accusations it faces, and also to give the employer and the administrative agency the chance to resolve the employee's grievances before the employee turns to litigation. *Cheek*, 31 F.3d at 500. Because most employees who file discrimination charges are not attorneys, however, the Seventh Circuit instructs that allegations in EEOC Charges should be viewed expansively when deciding whether a particular claim is within the scope of the Charge. *Id.* "A Title VII plaintiff need not allege in an EEOC charge each and every fact that combines to form the basis of each claim in her complaint." *Id.* Instead, a claim should be considered exhausted if it is "like or reasonably related to the EEOC charge, and can be reasonably expected to grow out of an EEOC investigation of the charges." *Cervantes*, 914 F.3d at 565 (cleaned up). To be considered "reasonably related" to the original charge, "the claims should involve the same conduct

6

and implicate the same individuals." *Miller v. Am. Airlines, Inc.*, 525 F.3d 520, 525 (7th Cir. 2008).

Generally, "retaliation and discrimination charges are not considered 'like' or reasonably related to one another." *Swearnigen-El v. Cook Cnty. Sheriff's Dep't*, 602 F.3d 852, 864–65 (7th Cir. 2010) (cleaned up). But this is a general principle only, as demonstrated by the facts in *Swearnigen-El*. In that case, the EEOC charge said that the employee faced discrimination on the basis of his race and sex—but he did not mention any retaliatory acts arising out of the complaints. *Id.* Indeed, there was no suggestion that he had reported the alleged discrimination to anyone else in the employer's supervisory chain or human resources department. *Id.* Not surprisingly, the Seventh Circuit concluded that the retaliation claim had not been exhausted. *Id.* at 865.

In contrast, here Myles did allege in her EEOC Charge specific facts that could form the basis of a retaliation claim. The Charge says that Myles "made management aware" of the hostile work environment and that the County "terminated her employment." Am. Compl., Exh. A. When viewed together, these facts suggest more than a race-discrimination claim (the only claim expressly checked in her Charge). An EEOC investigator speaking with Myles would ask about the circumstances surrounding the firing. An investigator might very well cover not only the episodes of the underlying discrimination claims, but also whom Myles told about the discrimination—especially because hostile work environment claims arising out of *co-worker* harassment (rather

7

than a supervisor) requires that the complainant invoke any employer-provided remedial procedures before vicarious liability can be imposed on the employer. So Myles would likely have told the investigator about her complaints to management (and beyond), as well as (of course) the ultimate termination of her employment. All in all, a retaliation claim could reasonably grow out of an investigation into the underlying claim of discrimination.

What's more, the Charge also implicates some of the same activity and individuals as the retaliation claim. Both the Charge and the Amended Complaint describe multiple complaints of race discrimination by Myles to her managers, as well as her later termination. And the same supervisor was involved in both claims: Myles' manager Ali received her complaints on several occasions and finally decided to fire Myles. Am. Compl. ¶ 12, 15, 17, 20. This factual relationship also supports the conclusion that Myles' retaliation claim is reasonably related to her Charge. An EEOC investigation office could reasonably investigate a causal link between Myles' complaint and her later firing

The cases cited by Cook County are also inapposite. Some did not mention an activity protected by Title VII, which is essential to a retaliation claim. *See Reynolds v. Tangherlini*, 737 F.3d 1093, 1101 (7th Cir. 2013) (holding alleged retaliatory conduct that consisted of a hostile work environment occurring long before the adverse promotion decision was not "cognizable as retaliation for activity protected by Title VII"); *Peters v. Renaissance Hotel Operating Co.*, 307 F.3d 535, 550–51 (7th Cir. 2002) (concluding that the employee failed to exhaust his retaliation claim because he did

not mention any protected activity, such as the filing of a complaint of discriminatory activity, in his charge). One case involved an EEOC Charge that did not mention any retaliation *conduct* from the employer at all. *See Uriostegui v. Lumisource, LLC*, 2014 WL 2600049, at *2 (N.D. Ill. June 10, 2014) (holding that the employee failed to exhaust the retaliation claim because he did not include such a claim or even mention the term unlawful termination in his EEOC charge). And another case alleged age discrimination in the federal-court complaint but mentioned no information about the plaintiff's age in the charge. *See Ajayi v. Aramark Bus. Servs., Inc.*, 336 F.3d 520, 527 (7th Cir. 2003). The facts provided in those charges were not reasonably related to the claims later alleged, whereas here Myles has offered some minimal information in the EEOC Charge that would reasonably grow into an examination of retaliation.

That is not to say, however, that the cases cited by Myles say what she thinks they say. Myles cites *Caratachea v. Homewood Indus.*, 2002 WL 31207200 (N.D. Ill. Oct. 2, 2002), and *Griffin v. Sutton Ford, Inc.*, 452 F. Supp. 2d 842, 846 (N.D. Ill. 2006), as support for her argument, but she overemphasizes their relevance here: the factual relationship between the retaliation claim and the charge were stronger in both those cases than Myles' connection here. The plaintiff in *Caratachea* alleged in her charge that her termination happened within three months of her complaint of sexual harassment. 2002 WL 31207200, at *2. The short time gap between those two events suggests a causal relationship through which the court could infer a retaliation claim. But, in her charge, Myles omits any mention of timing between her complaint and termination—she lists only the start of her employment and when she was

9

fired. Relatedly, in *Griffin*, the employer allegedly took the employee's personal belongings in reaction to her internal complaint. *Griffin*, 452 F. Supp. 2d at 846. Normally (and thankfully), an employer does not discriminate against an employee by throwing away her property. So the EEOC Charge in *Griffin* signaled that the employer might have retaliated against the employee. Unlike in *Griffin*, Myles does not describe an act as unusual as destruction of personal property. Having said all that, as explained earlier, there is enough in Myles' EEOC Charge to conclude that the retaliation claim is reasonably related to the claims of discrimination.

## IV. Conclusion

Cook County's motion for judgment on the retaliation claim is denied.[4]

ENTERED:

s/Edmond E. Chang
Honorable Edmond E. Chang
United States District Judge

DATE: September 29, 2022

---

[4] It is worth noting that because the OIG, an agency that is designed to be independent of the County, recommended Myles' firing after an investigation, it might very well be difficult for Myles to gather enough evidence to survive a summary judgment motion. But discovery is needed before getting to that point.