## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ILLINOIS
## EASTERN DIVISION

CHAKEETA MYLES,                    )
                                   )
Plaintiff,                         )
                                   )
vs.                                )      Case No. 1: 21-cv-3935
                                   )
COOK COUNTY a/k/a as COOK          )
COUNTY DEPARTMENT OF               )      Magistrate Judge Jeffrey T. Gilbert
REVENUE,                           )
                                   )
Defendants.                        )

## MEMORANDUM OPINION AND ORDER

This matter is before the Court on Third Party John Barrientos ("Barrientos")
Motion for Protective Order [ECF No. 69] ("Motion") as to a subpoena for trial
testimony served by Plaintiff Chakeeta Myles ("Plaintiff" or "Myles"). Barrientos, an
Investigator with Cook County's Office of The Independent Inspector General
("OIIG") who was involved in an OIIG investigation regarding Plaintiff, seeks to bar
anticipated questioning at his deposition that he claims would be in violation of the
deliberative process privilege. [ECF No. 69] at 1. The parties agreed to brief this
dispute before proceeding with the deposition. *See* [ECF Nos. 66-67]. For the reasons
set forth herein, the Motion is denied.

## LEGAL STANDARD

Federal Rule of Civil Procedure 26(b)(1) states that "[p]arties may obtain
discovery regarding any nonprivileged matter that is relevant to any party's claim or
defense and proportional to the needs of the case, considering the importance of the

issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit." FED. R. CIV. P. 26(b)(1). A party claiming that otherwise discoverable information is privileged must "expressly make the claim," and "describe the nature of the documents, communications, or tangible things ... in a manner ... that will enable other parties to assess the claim." FED. R. CIV. P. 26(b)(5)(A); *see also* FED. R. CIV. P. 45(e)(2)(A). The burden rests upon the party objecting to disclosure to show why the information is privileged and should not be produced. *See Kodish v. Oakbrook Terrace Fire Prot. Dist.*, 235 F.R.D. 447, 450 (N.D. Ill. 2006). District courts have broad discretion when ruling on discovery-related issues. *See Peals v. Terre Haute Police Dep't*, 535 F.3d 621, 629 (7th Cir. 2008); *see also* FED. R. CIV. P. 37(a).

Both parties addressed this dispute under Rule 26, but the issue presented is the potentially privileged nature of information sought pursuant to a subpoena for deposition. Rule 45 governs the use of subpoenas, although "[t]he scope of material obtainable by a Rule 45 subpoena is as broad as permitted under the discovery rules." *Andersen v. City of Chicago*, No. 16 C 1963, 2019 WL 423144, at *2 (N.D. Ill. Feb. 4, 2019) (citing *Williams v. Blagojevich*, 2008 WL 68680, at *3 (N.D. Ill. Jan. 2, 2008) and Advisory Committee Notes regarding 1991 Amendments to Rule 45(a)(2)). Rule 45(d)(3)(iii) provides, "[o]n timely motion, the court for the district where compliance is required must quash or modify a subpoena that: . . . (iii) requires disclosure of

privileged or other protected matter, if no exception or waiver applies . . ." Fed. R. Civ. P. 45(d)(3)(A)(iii). Accordingly, the Court will also consider Barrientos' motion under the standard set forth in Rule 45(d)(3)(A)(iii). *See Andersen*, 2019 WL 423144, at *1, *4 (analyzing non-party Illinois Prisoner Review Board's deliberative process privilege objections to defendant's subpoena for documents under Rule 45); *DeLeon-Reyes v. Guevara*, No. 1:18-CV-01028, 2021 WL 3109662, at *3-7 (N.D. Ill. July 22, 2021) (analyzing third-party respondent Cook County State's Attorney's motion to quash defendant's subpoena for deposition of a former Assistant State's Attorney based in part on deliberative process privilege under Rule 45).

"The deliberative process privilege is a qualified privilege that protects communications that are part of the decision-making process of a governmental agency and applies to the deposition testimony of government employees as well as document production requests." *See Connelly v. Cook Cnty. Assessor's Off.*, No. 19 CV 7894, 2022 WL 17718411, at *6 (N.D. Ill. Dec. 15, 2022) (internal citations omitted). It "serves to protect the quality of the flow of ideas within a government agency." *United States v. Bd. of Educ. of the City of Chi.*, 610 F. Supp. 695, 697 (N.D. Ill. 1985); *accord United States v. Farley*, 11 F.3d 1385, 1389 (7th Cir. 1993) ("Since frank discussion of legal and policy matters is essential to the decisionmaking process of a governmental agency, communications made prior to and as a part of an agency determination are protected from disclosure."). To this end, the privilege shields "communications that are part of the decision-making process of a governmental agency," *Farley*, 11 F.3d at 1389 (citing *NLRB v. Sears, Roebuck & Co.*, 421 U.S. 132,

150-52 (1975). These communications include "advisory opinions, recommendations[,] and deliberations comprising part of the process by which governmental decisions and policies are formulated." *Dep't of Interior v. Klamath Water Users Protective Assoc.*, 532 U.S. 1, 9 (2001) (citing *Sears, Roebuck & Co.*, 421 U.S. at 150).

The deliberative process privilege applies if the information sought is both "'predecisional'—generated before the adoption of an agency policy—and 'deliberative'—reflecting the give and take of the consultative process." *Holmes v. Hernandez*, 221 F. Supp. 3d 1010, 1016 (N. D. Ill. 2016) (quoting *Cont'l Ill. Nat'l Bank & Trust Co. of Chi. v. Indem. Ins. Co. of N. Am.*, 1989 WL 135203, at *2 (N.D. Ill. Nov. 1, 1989)); *see also Patrick v. City of Chicago*, 111 F. Supp. 3d 909, 915 (N.D. Ill. 2015). The privilege does not extend to "factual or objective material," or to information that "an agency adopts ... as its position on an issue." *Id.* (quoting *Cont'l Ill.*, 1989 WL 135203, at *2); *accord Enviro Tech Int'l, Inc. v. U.S. E.P.A.*, 371 F.3d 370, 374 (7th Cir. 2004). Neither does the privilege extend to "[c]ommunications made subsequent to an agency decision...." *Holmes*, 221 F. Supp. 3d at 1016 (quoting *Farley*, 11 F.3d at 1389). Courts have said, however, that although the deliberative process privilege "does not justify the withholding of purely factual material, or of documents reflecting an agency's final policy decisions ... it does apply to predecisional policy discussions, and to factual matters inextricably intertwined with such discussions," *Patrick*, 111 F. Supp. 3d at 915, *citing Enviro Tech Int'l, Inc. v. U.S. E.P.A.*, 371 F.3d 370, 374-75 (7th Cir. 2004) (discussing the application of the deliberative process exemption under the Freedom of Information Act).

4

There is a two-step process for determining whether the deliberative process privilege applies. *Holmes*, 221 F. Supp. 3d at 1016; *Patrick*, 111 F. Supp. 3d at 915-916. First, the government must show that the privilege applies to the documents at issue. *Holmes*, 221 F. Supp. 3d at 1016; *see also Evans*, 231 F.R.D. at 316; *Ferrell v. U.S. Dep't of Hous. and Urban Dev.*, 177 F.R.D. 425, 428 (N.D. Ill. 1998). If the government makes out a prima facie case that the privilege applies, then the burden shifts to the party seeking disclosure to establish "a particularized need" for the documents and that the party's need for the document outweighs the government's interest in confidentiality. *Holmes*, 221 F. Supp. 3d at 1016 (quoting *Farley*, 11 F.3d at 1389; *Ferrell*, 177 F.R.D. at 429); *Patrick*, 111 F. Supp. 3d at 915.

## ANALYSIS

### A. Applicability of Deliberative Process Privilege to Discrimination Cases Involving the Government as an Employer

As an initial matter, the Court is not convinced the deliberative process privilege applies to this case alleging racial discrimination and retaliation under Title VII against Plaintiff's former employer, the Cook County's Department of Revenue. "A number of district courts within the Seventh Circuit have concluded that the deliberative process privilege does not apply in cases, like this one, where the government's decision-making process is central to the case" and "a plaintiff's claims challenge the motive and intent behind the government's action," although "[t]he Seventh Circuit has not weighed in one way or the other on this issue." *See Connelly*, 2022 WL 17718411, at *6 (collecting cases); *see, e.g., United States v. Lake Cnty. Bd. of Comm'rs*, 233 F.R.D. 523, 527-28 (N.D. Ind. 2005) (privilege "does not apply in civil

rights cases in which the defendant's intent to discriminate is at issue"); *Glenwood Halsted LLC v. Vill. of Glenwood*, No. 11 C 6772, 2013 WL 140794, at *3 (N.D. Ill. Jan. 11, 2013) ("[B]ecause Defendants' intent and misconduct are directly at issue, the deliberative process privilege does not apply."); *Lewis v. Phillips*, No. 10 C 3163, 2012 WL 5499448, at *2 (C.D. Ill. Nov. 13, 2012) (same). The D.C. Circuit similarly reasoned, "the central purpose of the privilege is to foster government decisionmaking by protecting it from the chill of potential disclosure.... If Congress creates a cause of action that deliberately exposes government decisionmaking to the light, the privilege's raison d'être evaporates." *See In re Subpoena Duces Tecum Served on Off. Of Comptroller of Currency*, 145 F.3d 1422, 1424 (D.C. Cir. 1998) ("it seems rather obvious to us that the privilege has no place in a Title VII action or in a constitutional claim for discrimination").[1]

Courts have also reasoned that because the purpose of the privilege is to protect the decision-making of government bodies while creating policy, it should not apply where the government agency is instead acting as an employer making ordinary personnel decisions. *See, e.g.*, *McFarland-Lawson v. Fudge*, No. 16-CV-685, 2023 WL 1865336, at *2-3 (E.D. Wis. Feb. 9, 2023) (privilege "applies to pre-decisional deliberative policy discussions—the decisions that an agency makes by virtue of its status as an executive branch agency"); *Connelly*, 2022 WL 17718411, at *6 ("the Assessor's Office was acting in its capacity as an employer – rather than as a

---

[1] Plaintiff cites cases for this proposition, *see* [ECF No. 72] at 6-7, but Barrientos offers no argument in reply.

governmental body formulating important public policy – when it terminated plaintiff, and [the Cook County Assessor] will be called upon to testify regarding the motive and intent underlying this 'ordinary employment decision'"). Thus, courts have found interpreting the privilege to apply to routine personnel decisions made by government bodies acting as employers "unmoors it from its foundation and takes it far beyond its intended scope." *See McFarland-Lawson*, 2023 WL 1865336, at *2-3 ("An employee alleging that a private employer discriminated against her would undoubtedly be entitled to discovery regarding decisionmakers' deliberations relating to an adverse employment action. A government employee is no less entitled to this sort of routine discovery.") (collecting cases and rejecting deliberative process privilege claim as to any discovery related to Department of Housing and Urban Development (HUD) decision-making regarding plaintiff's "status as an employee").

The Seventh Circuit has not resolved this question, however, and other courts have noted the deliberative process privilege "must be addressed and resolved one lawsuit—indeed, one document—at a time." *See Illinois Coal. for Immigrant & Refugee Rts., Inc. v. Wolf*, No. 19 C 6334, 2020 WL 7353408, at *2 (N.D. Ill. Dec. 15, 2020); *Gudkovich v. City of Chicago*, No. 1:17-CV-8714, 2022 WL 252716, at *10 (N.D. Ill. Jan. 27, 2022) ("In the absence of clear guidance by the Seventh Circuit on this issue, several courts in this District have declined to adopt such a categorical approach and have instead applied the established two-step formula on a case-by-

case – and document-by-document – basis.”). Accordingly, the Court will consider the deliberative process privilege claim here under the usual two-step process.[2]

## B. OIIG Fails to Make a Prima Facie Case for the Deliberative Process Privilege

For OIIG to make a prima facie case for the deliberative process privilege, it must do the following: “(1) the department head with control over the matter must make a formal claim of privilege, after personal consideration of the problem; (2) the responsible official must demonstrate, typically by affidavit, precise and certain reasons for preserving the confidentiality of the documents in question; and (3) the official must specifically identify and describe the documents.” *DeLeon-Reyes*, 2021 WL 3109662, at *3-7 (citing *Rodriguez v. City of Chicago*, 329 F.R.D. 182, 186 (N.D. Ill. 2019)). Rule 45 similarly requires a person withholding information based on a privilege assertion in response to a subpoena to: “(i) expressly make the claim; and (ii) describe the nature of the withheld documents, communications, or tangible things in a manner that, without revealing information itself privileged or protected, will enable the parties to assess the claim.” Fed. R. Civ. P. 45(e)(2)(A)(i) & (ii).

The Cyranoski Declaration attached to the Motion fails to make a prima facie case for the privilege. While the Court is cognizant of the circumstances here, where the privilege is being asserted based on anticipated deposition questioning (and

---

[2] Although neither party raises the issue in the briefing on the Motion, the Court notes some courts have flatly rejected the existence of a deliberative process privilege as to state or municipal government actors. *See Murdock v. City of Chi.*, 565 F. Supp. 3d 1037 (N.D. Ill. 2021) (declining to recognize any deliberative process privilege for state and municipal officials in Illinois, relying on *People ex rel. Birkett v. City of Chicago*, 184 Ill.2d 521 (Ill. 1998)). As the Court concludes the deliberative process privilege does not apply here, it need not resolve this question in this case.

Plaintiff acknowledges it "is considerably more difficult to provide specific reasons against disclosure" before a deposition has taken place, *see* [ECF No. 72] at 4-5), that does not obviate the need for OIIG to meet its burden to make a prima facie showing. Here, the cursory assertion of the privilege in the Declaration over anticipated areas of questioning fails to demonstrate that Cyranoski personally considered the issue or provide "precise and certain reasons" for applying it to the expected testimony.

First, the Declaration does not describe Cyranoski's "personal consideration." *See Rodriguez v. City of Chicago*, No. 17 C 7248, 2019 WL 3562683, at *3 (N.D. Ill. Aug. 1, 2019) (finding "corrected affidavit . . . sufficiently establishes that she has undertaken the necessary personal consideration of the problem by reviewing and considering each of the pages in the set of Withheld Materials"). The Declaration merely states Cyranoski is "the decision-maker responsible for asserting or waiving deliberative process . . . privileges," Barrientos "was involved in an independent OIIG investigation concerning an incident of workplace violence involving" Plaintiff, and asserts the privilege as to anticipated questioning. [ECF No. 69-1]. While arguably this may imply Cyranoski's personal consideration, the Declaration fails to expressly state he did so or provide factual support for his familiarity with the issues. [ECF No. 69-1] at ¶¶ 2, 6-7. *Cf. Holmes*, 221 F. Supp. 3d at 1017 (declaration sufficient where privilege was asserted "based on [agency's general counsel's] familiarity with the agency's investigative procedures and with draft summary reports," notwithstanding "that she has not personally reviewed each draft summary report").

Second, even if the Declaration satisfied the personal consideration requirement, it unquestionably does not provide "precise and certain reasons for preserving the confidentiality" of the testimony at issue. Although the Declaration states "the attorneys for the parties . . . intend to ask questions" during the deposition "which will bear on the OIIG's process, underlying decision-making, analysis, assessment and other mental processes" regarding the investigation and asserts the privilege over this subject matter, it does not offer any reasons for maintaining the confidentiality of such information. *See Anderson v. Marion Cnty. Sheriff's Dep't*, 220 F.R.D. 555, 562 (S.D. Ind. 2004) (affidavit from Section Commander of sheriff department's internal affairs division "falls short of establishing the privilege" where it did not "specifically identif[y] what documents the MCSD is withholding" or "describe the 'precise and certain reasons' for maintaining the confidentiality of those specific documents"). *Compare DeLeon-Reyes*, 2021 WL 3109662, at *4 (affidavit from Chief in litigation division at Cook County State's Attorneys' Office (CCSAO) satisfied prima facie requirement where it identified the potentially privileged testimony and explained why CCSAO preserved the confidentiality of such information); *Rodriguez*, 2019 WL 3562683, at *3 (affidavit provided reasons for maintaining confidentiality of information, including the risk that future witnesses might obtain information about what other witnesses had said or learn details about the agency's investigative methods). While Barrientos' Reply may provide some reasons for applying the privilege here, *see* [ECF No. 74] at 6, attorney argument does not satisfy the OIIG's

burden to present a prima facie case (and such arguments should have been included in the Motion in the first instance, rather than a reply brief).[3]

Moreover, it is not clear all of the anticipated areas of questioning would necessarily invade OIIG's "deliberative" process as to the investigation of Plaintiff's conduct. See *Holmes*, 221 F. Supp. 3d at 1016 (N. D. Ill. 2016); *Patrick*, 111 F. Supp. 3d at 915. For example, Barrientos does not explain why inquiring about "the tone of his questioning," [ECF No. 74] at 3, would reveal the give and take of the agency's deliberations. Accordingly, OIIG has failed to make a prima facie showing for application of the privilege as to Barrientos' anticipated testimony.

### C. Plaintiff Has Established a Particularized Need for the Information Sought that Outweighs OIIG's Interest in Confidentiality

Even if Barrientos had made a prima facie showing, Plaintiff has met her burden to demonstrate a particularized need for this information that outweighs the interest of the OIIG in keeping the information confidential. "There are five factors the Court must consider to determine whether there is a particularized need: (1) the relevance of the documents to the litigation; (2) the availability of other evidence that would serve the same purpose; (3) the government's role in this litigation; (4) the

---

[3] Barrientos relies on *U.S. Sec. & Exch. Comm'n v. SBB Rsch. Grp., LLC*, No. 19 C 6473, 2022 WL 2982424, at *3 (N.D. Ill. July 28, 2022) (Finnegan, J.), incorrectly describing this as a Seventh Circuit decision and providing an incorrect Westlaw citation. [ECF No. 74] at 4. This case is not helpful in resolving the sufficiency of the Cyranoski Declaration. There, the Secretary of the Securities and Exchange Commission ("SEC") provided a declaration and a privilege log in support of privilege claim, and the court reviewed the underlying documents in camera. (*Id.*) Because the court conducted this review, there was no risk that any claimed inadequacies in the declaration resulted in improperly shielding documents from discovery. (*Id.*) Accordingly, the adequacy of the declaration was not directly addressed in this decision.

seriousness of the litigation and the issues involved; and (5) the degree to which the disclosure of the document sought would tend to chill future deliberations within government agencies." *Bahena v. City of Chicago*, No. 17 C 8532, 2018 WL 2905747, at *4 (N.D. Ill. June 11, 2018) (internal citations omitted).

As to Factor One, information regarding OIIG's motive and intent in investigating Plaintiff's conduct and recommending that the Defendant terminate Plaintiff's employment is relevant to Plaintiff's discrimination and retaliation claims. Defendant's Interrogatory responses state "the Department of Revenue decided to terminate Plaintiff, in part, because an internal investigation by the OIIG determined that [Plaintiff] was physically violent . . ." to another employee and the decision to terminate "was based on an OIIG investigation conducted by John Barrientos and Patrick Blanchard where the OIIG's recommendation was to terminate [Plaintiff's] employment . . ." [ECF No. 72] at Ex. B., ¶¶ 11-12. *See, e.g., Gibbons v. Vill. of Sauk Vill.*, No. 15-cv-4950, 2016 WL 7104255, at *4 (N.D. Ill. Dec. 6, 2016) (where plaintiff asserted she was terminated by the Village in retaliation for filing discrimination claims, she established a particularized need for information reflecting "the Village's 'motive and basis'" for terminating her). Thus, OIIG's investigation and recommendation are directly relevant to Plaintiff's claims.

As to Factor Two, the Court also concludes Plaintiff does not have access to alternative information that would serve the same purpose as the testimony Plaintiff seeks from Barrientos. Although Barrientos notes Plaintiff has OIIG's investigative report and recommendations, he does not explain how these materials would provide

the information about Barrientos' intent and motives that Plaintiff seeks to discover, including as to why and how he asked certain questions to Plaintiff and the other involved employee, whether he considered the other employee's prior disciplinary history, the scope and nature of any investigation by OIIG as to the other employee's conduct, or his knowledge of Plaintiff's email claiming discriminatory conduct that was allegedly submitted before the investigated incident took place. [ECF No. 72] at 3-4. *See, e.g., Sronkoski v. Schaumburg Sch. Dist.*, No. 54, 2009 WL 1940779 at *3 (N.D. Ill. 2009) (rejecting defendant's argument that plaintiff did not need additional information because she had been "told why she was fired" because plaintiff "is not required to accept [the defendant's] representations at face value").[4]

The Court is also not persuaded by Barrientos' arguments as to Factor Three, the government's role in the litigation. Barrientos asserts that neither he or OIIG is a party to this lawsuit and therefore how OIIG conducted its investigation of Plaintiff is not pertinent because it is an independent agency with "no relevant connection" to Defendant. [ECF No. 74] at 6. This argument fails. "Where the government agency asserting the privilege is a party to the lawsuit, *or its conduct bears on the plaintiff's claim*, this factor weighs in favor of finding a particularized need." *See Holmes*, 221 F. Supp. 3d at 1021 (emphasis added) (concluding factor three supported plaintiff's particularized need for draft investigation reports prepared by the Independent

---

[4] Barrientos also says Plaintiff has access to publicly available quarterly reports which provide additional information about OIIG's investigations, [ECF No. 74] at 5-6, but again, does not explain how these reports would provide the information regarding Barrientos' intent that Plaintiff seeks through the deposition.

Police Review Authority (IPRA), the agency responsible for investigating police misconduct in Chicago, noting "IPRA is not an independent municipality; it is an agency of the City"). Here, OIIG is part of the Cook County government and its purpose is "to conduct investigations and issue findings and recommendations to Cook County government officials." [ECF No. 74] at 1. Barrientos, on behalf of OIIG, investigated Plaintiff's conduct and the workplace discrimination alleged by Plaintiff against Defendant, and OIIG recommended Plaintiff's termination. [ECF No. 74] at 1, 6. Thus, OIIG played a direct role in Plaintiff's termination.

Moreover, although Barrientos asserts "[i]t is the intent of Defendant" and not OIIG that is relevant here, [ECF No. 74] at 6, Plaintiff's theory is that OIIG was the "de facto decision maker" because Department of Revenue Director Zahra Ali made her decision to terminate Plaintiff's employment based on OIIG's investigation and recommendation and did not conduct any independent investigation. *See* [ECF No. 72] at 1-2, 5-6.[5] Based on the record before it on this Motion, the Court concludes this could be a viable theory and therefore Plaintiff is entitled to discovery as to OIIG and Barrientos' intent and motives in investigating Plaintiff. *See*, *e.g.*, *Taylor v. Ways*, 999 F.3d 478, 489 (7th Cir. 2021) (questions of fact precluded summary judgment on cat's paw theory of liability where a defendant government employee involved with investigating charges resulting in plaintiff's termination was alleged to act with

---

[5] Plaintiff does not attach the referenced deposition testimony from Ms. Ali, [ECF No. 72] at 1-2, but Barrientos does not appear to dispute this fact. Moreover, Defendant's interrogatory responses state it "decided to terminate Plaintiff because of an internal investigation by the OIIG. . . " and that Ms. Ali's "decision was based on" the OIIG investigation. *See* [ECF No. 72] at Ex. B., ¶¶ 11-12. In addition, the interrogatory responses do not identify any independent investigation conducted by Ms. Ali as a basis for the termination decision.

unlawful motives; evidence as to Sheriff's Office of Professional Responsibility's investigator's racial animus and extensive involvement in Plaintiff's termination by the Cook County Sheriff's Office could allow a reasonable juror to conclude investigator "did not like [Plaintiff] because of his race and deliberately slanted the OPR investigation to force him out of the Sheriff's Office"); *Grant v. Trustees of Indiana Univ.*, 870 F.3d 562, 570–71 (7th Cir. 2017) (plaintiff "may have been able to show pretext if, for example, he had demonstrated" the report from the independent investigation firm hired by defendant's counsel, relied on by the decision-maker in terminating plaintiff's tenured employment, "was inaccurate or biased").

Finally, Barrientos says Factor Five favors him because disclosure of the OIIG's "pre-decisional information" related to its investigation would chill future deliberations within the OIIG. [ECF No. 74] at 6. As an initial matter, as noted above, these asserted reasons for preserving the confidentiality of Barrientos' anticipated testimony are unsupported attorney argument. Even accepting these arguments, however, Barrientos ignores Plaintiff's cited authority explaining why there is a particularized need for such information in cases alleging discrimination and retaliation. *See* [ ECF No. 72] at 6-7. *See Connelly*, 2022 WL 17718411, at *8 ("even if the deliberate process privilege applied and defendants had properly asserted it, the Court – consistent with multiple decisions from this District – finds that plaintiff has met her burden of showing a particularized need for [Assessor's] testimony regarding the true motive and basis for terminating her and that this need outweighs defendants' asserted need for confidentiality") (citing *Gibbons v. Vill. of Sauk Vill.*,

No. 15-cv-4950, 2016 WL 7104255, at *4 (N.D. Ill. Dec. 6, 2016) and *Sronkoski,* 2009 WL 1940779, at *3, among other decisions).[6] Although there may be a need for OIIG to "protect its ability to have frank discussions of legal and policy matters, limitations should be placed on its ability to keep discussions confidential in cases where, as here, the discussion itself may be central to a plaintiff's retaliation claim." *Gibbons,* 2016 WL 7104255 at *4.

Therefore, the Court concludes all of the factors weigh in favor of finding Plaintiff has demonstrated a particularized need for Barrientos' deposition testimony and that her need outweighs the OIIG's interest in keeping the information regarding Barrientos' investigation confidential.

For all of the reasons stated above, Third Party John Barrientos' Motion for Protective Order [ECF No. 69] is denied.

It is so ordered.

Jeffrey T. Gilbert
United States Magistrate Judge

Dated: August 3, 2023

---

[6] Barrientos does not dispute that Factor Four, the seriousness of this litigation alleging race discrimination and retaliation, supports Plaintiff here. *See* [ECF No. 74] at 5-6.